## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-CR-20106-SCOLA

UNITED STATES OF AMERICA

v.

DUNIEL TEJEDA,

**Defendant.**

_____/

### FACTUAL PROFFER IN SUPPORT OF GUILTY PLEA

If this matter were to proceed to trial, the parties agree that the United States, by and through the United States Attorney for the Southern District of Florida and the Consumer Protection Branch of the United States Department of Justice (the "Government") would be able to prove the following facts beyond a reasonable doubt. The defendant, Duniel Tejeda, understands and agrees that these are not all of the facts that the Government would prove if the case proceeded to trial, but are sufficient to prove the charge of conspiracy to commit mail and wire fraud as alleged in Count 1 of the Indictment in this case.

Beginning in or around February 2014 and continuing through in or around July 2016, within the Southern District of Florida and elsewhere, the defendant conspired with others to defraud sponsors and clinical research organizations responsible for initiating and overseeing clinical trials of new investigational drugs. The defendant and his co-conspirators secured contracts to conduct clinical trials, and caused sponsors and/or clinical research organizations to make payments on those contracts through the electronic transfer of funds and mailing of checks, by making materially false and fraudulent representations about subject eligibility for and

participation in the clinical trials, among other things. The conspiracy occurred by means of materially false and fraudulent pretenses to knowingly devise a scheme and artifice to defraud and to obtain money and property through the delivery of certain mail matter and through certain wire communications, in violation of Title 18, United States Code, Section 1349.

During the conspiracy, the defendant was employed as a project manager and study coordinator at Tellus Clinical Research, Inc. ("Tellus"), a medical research clinic located in Miami, Florida that conducted clinical trials on behalf of pharmaceutical company sponsors. Other individuals employed by Tellus during the conspiracy included, among others, Martin Valdes, a licensed medical doctor who served as the clinical investigator for Tellus; Fidalgis Font, the chief executive officer of Tellus; Analay Rico, a study coordinator; Daylen Diaz, a study coordinator; and Julio Lopez, a study coordinator.

Between February 2014 and July 2016, Tellus entered into contracts to conduct clinical research trials on behalf of more than ten pharmaceutical company sponsors and contract research organizations. Among the clinical research trials conducted by Tellus were two studies of an investigational drug intended to treat opioid dependency sponsored by Sponsor 1 and managed by CRO 1 (collectively, "the opioid dependency trials"); two studies of an investigational drug intended to treat irritable bowel syndrome in female patients sponsored by Sponsor 2 and managed by CRO 2 (collectively, "the IBS trials"); and one study of an investigational injectable drug intended to treat diabetic nephropathy sponsored by Sponsor 3 and managed by CRO 3 ("the diabetes trial"). Valdes was the clinical investigator hired by the sponsors and/or CROs for each of these five studies (collectively, "the Studies"). In his role as project manager and on behalf of Tellus, the defendant signed contracts with the sponsor and/or CRO for each of the Studies. For its work on the Studies, Tellus was paid more than $550,000.

In addition to his role as project manager, the defendant also served as a study coordinator for certain clinical trials at Tellus. In that role, the defendant knew that he was responsible for administering procedures to subjects in the Studies and preparing honest and accurate written records—including records known as "case histories"—describing the participation of subjects in the Studies.

For purposes of obtaining money by means of materially false and fraudulent pretenses, representations, and promises, the defendant and his co-conspirators caused false information to be entered in subject case histories to make it appear that subjects had, among other things, satisfied the eligibility criteria to participate in the Studies, provided informed consent to participate in the Studies, received physical examinations from Valdes, received or been administered the investigational drug for the Studies, and received payments for visits to Tellus for the Studies when, in truth and in fact, and as the defendant well knew, such events had not occurred.

For example, on or about March 11, 2014, in the first opioid dependency study for subject N.F., the mother of Font, the defendant entered his initials, D.T., in case history documentation to represent falsely that he had dosed N.F. with one tablet of the study medication at 11:34 and that the dosing had been witnessed by Font. On that same date, the defendant entered his initials, D.T., in case history documentation to represent falsely that he had also dosed N.F. with three tablets of the study medication 1.5 hours later at 13:04, as required by the study protocol, and that the dosing had been witnessed by Font. In truth and in fact, and as the defendant well knew, N.F. was not participating in the first opioid dependency study as required by the protocol, the defendant had not dosed N.F. with study medication, Font had not witnessed any dosing of N.F. with study medication, and those representations were false.

On or about June 9, 2015, Rico initialed case history documentation for subject G.C., falsely representing that G.C. was a study subject participating in the second IBS study, that G.C. had visited Tellus, that Rico had obtained G.C.'s urine and blood for analysis as required by the protocol governing the second IBS study, and that Rico had dispensed study medication to G.C. On that same date, Valdes initialed case history documentation for subject G.C., falsely representing that he had conducted a physical examination of G.C. On that same date, the defendant wrote check number 3094, endorsed by Font, to G.C. in the amount of $100 for G.C.'s purported participation in visit number 7 for the second IBS Study. A copy of check number 3094 was placed in G.C.'s patient file and represented as having been provided to G.C. In truth and in fact, and as the defendant well knew, G.C. was not participating in the second IBS study, had not received a check for her participation in visit 7, and these representations were false. On or about June 10, 2015, the defendant deposited check number 3094, made payable to G.C. for "visit 7" in the second IBS study, to his Bank of America account.

On or about August 12, 2015, Diaz initialed case history documentation for subject D.C., falsely representing that D.C. was a study subject participating in the second IBS study and had visited Tellus. On that same date, Valdes initialed case history documentation for subject D.C., falsely representing that he had conducted a physical examination of D.C. On that same date, the defendant created a false copy of check number 3384, made payable to D.C. in the amount of $100 for D.C.'s purported participation in visit number 13 for the second IBS study. A copy of check number 3384 was placed in D.C.'s patient file and represented as having been provided to D.C. In truth and in fact, and as the defendant well knew, D.C. was not participating in the second IBS study, had not received a check for her participation in visit 13, and these representations were false. Instead, on or about August 13, 2015, the defendant wrote a true copy of check number

3384, made payable to co-conspirator "Julio C. Lopez" in the amount of $100 for "v13" for the second IBS study.

Further, the defendant knew that subjects in the IBS studies were required to make daily phone calls to an "e-diary" system (a toll-free number maintained by a third party) and report their personal experience with the study drug. In furtherance of the conspiracy, the defendant and his co-conspirators knowingly placed telephone calls to the e-diary system, using the subjects' individual PIN numbers, for purposes of reporting fabricated data on behalf of subjects in the IBS studies. The defendant and his co-conspirators placed these fraudulent telephone calls on behalf of more than ten subjects in the IBS studies.

The foregoing facts do not describe all the details of the scheme, or the defendant's complete knowledge of the scheme, but are offered for the limited purpose of establishing a sufficient basis to support the defendant's plea of guilty to the charge of conspiracy to commit mail and wire fraud.

JUAN ANTONIO GONZALEZ
Acting United States Attorney

GUSTAV W. EYLER
Director
U.S. Department of Justice
Consumer Protection Branch

Date: 10/7/2021

By: _____
LAUREN M. ELFNER
TRIAL ATTORNEY
U.S. DEPARMENT OF JUSTICE
CONSUMER PROTECTION BRANCH

Date: 10/7/2021

By: _____
JOSHUA D. ROTHMAN
TRIAL ATTORNEY
U.S. DEPARMENT OF JUSTICE
CONSUMER PROTECTION BRANCH

Date: 10/7/21

By: _____
DAVID DONET
ATTORNEY FOR DEFENDANT

Date: 10/06/21

By: _____
DUNIEL TEJEDA
DEFENDANT